**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
(Alexandria Division)

| | |
|---|---|
| JOHN JONES and BELINDA JONES, | ) |
| | ) |
| Plaintiffs, | )    Civil Action No. 1:09CV513 |
| | ) |
| v. | )    JCC/IDD |
| | ) |
| OWSLEY BROWN FRAZIER, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION, OR, IN THE ALTERNATIVE,
TRANSFER VENUE**

\* \* \* \* \*

**INTRODUCTION**

Plaintiffs Belinda and John Jones, residents of Virginia, filed the instant action against

defendant, Owsley Brown Frazier, a lifelong resident and citizen of Kentucky, on May 8, 2009

based on the diversity jurisdiction provisions of 28 U.S.C. § 1332.  The Complaint alleges that

Mr. Frazier intentionally inflicted emotional harm on plaintiffs in relation to the establishment of

an antique firearms museum in Louisville, Kentucky.  While the Joneses' claims have no merit,

are barred by the applicable limitations periods, and are barred by a settlement and release

agreement executed by the parties in 2005, Mr. Frazier files the instant motion to dismiss on

grounds that this Court lacks *in personam* jurisdiction.  The Complaint does not allege causes of

action or contacts sufficiently associated with Virginia to subject Mr. Frazier to jurisdiction in

this forum.

In the alternative, Mr. Frazier respectfully moves this Court to transfer venue of this

action to the United States District Court for the Western District of Kentucky, Louisville

Division.  The facts and circumstances underlying the Complaint have been litigated there for the last five years and transfer will best serve the interests of convenience, justice, and judicial economy.

## PLAINTIFFS' COMPLAINT[1]

Plaintiffs' Complaint seeks $5 million in damages for unspecified legal claims.  To support this demand plaintiffs allege the following:  Plaintiff Belinda Jones, a Virginia resident, created Collectable Arms International, Inc. ("CAI") for the purposes of buying, selling, and trading antique firearms and other weapons.  Compl. ¶¶ 2, 6.  In 1998, CAI began to buy guns from, sell guns to, and trade guns with Michael Salisbury.  *Id*. ¶ 7.  Mr. Salisbury was a private arms collector and dealer who bought guns for his own personal collection and for resale to others.  *Id.*  At some point between 1998 and 2002, Mr. Salisbury purchased "a number of" antique firearms from CAI which were ultimately sold to the defendant, Mr. Frazier, who is a citizen of Kentucky.  *Id.* ¶¶ 3, 7, 9.  The Complaint does not attempt to suggest that there was any direct contact between the Joneses and Mr. Frazier or that Mr. Frazier even knew that Mr. Salisbury was buying firearms from the Joneses.

Mr. Frazier founded the Owsley Brown Frazier Historical Arms Museum in Kentucky.  *Id*. ¶ 12.  "[S]ome" of the firearms for the museum came from the Joneses.  *Id.* ¶ 19.  Mr. Salisbury introduced R.L. Wilson to Mr. Frazier as an appraiser for firearms.  *Id.* ¶¶ 17-19.  Mr. Wilson provided inflated appraisals for the firearms sold to Mr. Frazier.  *Id.*  During this time period, Mr. Salisbury took commissions on firearms he procured.  *Id.* ¶ 21.  In 2002, one of the

---

[1] Because this motion challenges the sufficiency of the plaintiffs' allegations of personal jurisdiction on the face of the Complaint, defendant accepts the well-pled factual allegations as true for the purposes of this motion.  Defendant, however, disputes the accuracy of these allegations and does not waive the right to raise these factual disputes at the appropriate time.

museum employees, Ed Webb, discovered both the alleged commission and the inflated appraisals. *Id.* This resulted in the firing of Messrs. Salisbury and Wilson. *Id.* ¶ 23. Mr. Frazier purportedly induced the firings, "[f]earing" that the museum board would discover his alleged participation in the commission arrangement and the inflation of appraisals. *Id.* ¶ 22-24. As part of his "mock outrage," Mr. Frazier placed blame for the inflated appraisals on Messrs. Salisbury and Wilson, as well as on the Joneses. *Id.* ¶ 24. Purportedly to "hide his actions" and "vilify" Salisbury, Wilson and the Joneses, Mr. Frazier allegedly: (1) hired an attorney in Philadelphia, Paul Weller with Morgan, Lewis & Bockius LLP, to conduct an investigation; and (2) "fabricated a story that convinced" Mr. Weller of Salisbury's malfeasance, and by association the malfeasance of the Joneses, who Mr. Weller interviewed on his own. *Id.* ¶¶ 27, 28.

The Weller investigation resulted in a memorandum forwarded to the United States Attorney in Louisville, Kentucky. *Id.* ¶ 30. The course of conduct described above resulted in civil and criminal proceedings in federal court in Louisville. *Id.* ¶ 31, 32. In 2004, Mr. Frazier filed a civil action against several defendants, including Salisbury, Wilson, the Joneses and CAI. *See Owsley Brown Frazier v. Michael K. Salisbury, et al.*, Civil Action No. 3:04-CV-124-JGH, (United States District Court for the Western District of Kentucky, Louisville Division)[2]; Compl. ¶ 32. The government filed a criminal case in the same court in 2006, although the Joneses were not indicted in that case. *See United States of America v. Michael K. Salisbury, et. al*, Case No. 3:06-CR-00010-S, (United States District Court for the Western District of Kentucky, Louisville Division)[3]; Compl. ¶ 31.

---

[2] The "Civil Docket for Case #: 3:04-cv-00124-JGH" is attached as Ex. 1 for the Court's convenience.
[3] The "Criminal Docket for Case #: 3:06-cr-00010-CRS" is attached as Ex. 2 for the Court's convenience.

In 2004, while the civil suit in Kentucky was pending, the Joneses filed for bankruptcy. *See In Re: John Jones and Belinda Jones*, Case No. 04-11658-RGM (United States Bankruptcy Court for the Eastern District of Virginia)[4]; Compl. ¶ 33. Through his attorney, Mr. Frazier entered an appearance in the bankruptcy proceedings to protect his claim from the pending civil litigation in Kentucky. Compl. ¶ 37. Mr. Frazier allegedly made false claims in these proceedings. *Id.* ¶ 38. During this time-period, Mr. Frazier allegedly sent agents to unspecified gun shows in unspecified locations to "defame, humiliate and discredit the Joneses." *Id*. ¶¶ 34, 35. In 2005, the civil case against the Joneses in Kentucky was dismissed pursuant to a settlement agreement. *Id.* ¶ 39. During the criminal trial, in which the Joneses were witnesses, an unidentified informant reported that the Joneses had bragged about taking money from Salisbury in relation to their testimony. *Id.* ¶ 41. Plaintiffs allege that the unidentified informant was Mr. Frazier or one of his agents, but make no attempt to specifically identify the "informant." *Id.* The Joneses were questioned by authorities in relation to these allegations. *Id.* ¶ 42. Plaintiffs further allege that Mr. Frazier intended to inflict emotional harm on them through the course of conduct alleged above. *Id.* ¶¶ 47-52.

## ARGUMENT

Plaintiffs admit that Mr. Frazier is a citizen and resident of Kentucky. Compl. ¶ 3. They do not allege that Mr. Frazier was a resident of Virginia, or even physically present in the state at any time during the course of conduct alleged in the Complaint. In fact, plaintiffs do not identify any direct dealings with Mr. Frazier. Instead, plaintiffs allege conduct by Mr. Frazier that occurred, almost entirely, outside of the Commonwealth of Virginia. Yet plaintiffs attempt to

---

[4] The Bankruptcy Docket pertaining to the Joneses' bankruptcy is attached as Ex. 3 for the Court's convenience.

force Mr. Frazier to litigate in Virginia by incorrectly asserting that this Court has personal jurisdiction over Mr. Frazier under the Virginia long-arm statute, VA. CODE ANN. § 8.01-328.1. Plaintiffs, however, have failed to allege even *prima facie* evidence sufficient to support the allegation of personal jurisdiction. Specifically, plaintiffs fail to demonstrate (1) that any alleged tortious conduct by Mr. Frazier in Virginia gave rise to plaintiffs' claims such that this Court could find specific jurisdiction over Mr. Frazier; or (2) that Mr. Frazier has had such systematic and continuous ties with Virginia as to support general jurisdiction over him. Therefore, this Court should decline to exercise personal jurisdiction over Mr. Frazier and should dismiss the Complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

In the alternative, this Court should transfer this action to the United States District Court for the Western District of Kentucky, Louisville Division. Transfer will further the interests of justice because of the overwhelming factual and legal nexus between the Western District of Kentucky and the allegations in the Complaint. This transferee venue is intimately familiar with the events underlying the Complaint and has overseen both criminal and civil litigation predicated on the same course of conduct. Therefore, the Western District of Kentucky can resolve plaintiffs' action most conveniently and economically.

## I.    THIS COURT LACKS PERSONAL JURISDICTION OVER MR. FRAZIER.

When challenged by a motion under Rule 12(b)(2), personal jurisdiction is a question for the judge, with the burden on the plaintiff to prove grounds for jurisdiction by a preponderance of the evidence. *Mylan Labs, Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993). Even when, as here, a court is asked to adjudicate the issue on the pleadings, briefs, and other documents without need of an evidentiary hearing, plaintiffs must still prove a *prima facie* case for personal jurisdiction. *Id.* at 60. The court may accept the well-pled allegations in the complaint as true

and may consider any uncontradicted facts offered by the defendant.  *Id.* at 62; *see also Negron-Torres v. Verizon Commc'ns, Inc.*, 478 F.3d 19, 23 (1st Cir. 2007).  But the court is not required to "credit conclusory allegations or draw farfetched inferences."  *Negron Torres*, 478 F.3d  at 23.

A federal district court in Virginia may only exercise personal jurisdiction over a non-resident if such jurisdiction is authorized by Virginia's long-arm statute and is consistent with the constitutional due process required by the Fourteenth Amendment of the United States Constitution.  *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).  Virginia's long-arm statute, VA. CODE ANN. § 8.01-328.1, extends to the limits of the due process clause, merging the statutory inquiry with the constitutional inquiry.  *Consulting Eng'rs*, 561 F.3d at 277.[5]

The Supreme Court recognizes two types of personal jurisdiction: specific jurisdiction and general jurisdiction.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411 (1984).  Specific jurisdiction requires "the plaintiff to show that the defendant 'purposefully directed his activities at the residents of the forum' and that the plaintiff's cause of action 'arise[s] out of' those activities."  *Consulting Eng'rs*, 561 F.3d at 277 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  General jurisdiction applies when the plaintiff shows that the defendant has "continuous and systematic" contacts with the forum.  *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 213 (4th Cir. 2002).  But "the threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction."  *ALS Scan, Inc. v. Digital Serv. Consultants,*

---

[5] Nevertheless, "it is still 'possible that a non-resident defendant's contacts with Virginia could fulfill the dictates of due process, yet escape the literal grasp of [the] long-arm statute.'"  *Id.* at 277 n.4 (quoting *DeSantis v. Hafner Creations, Inc.*, 949 F. Supp. 419, 423 (E.D. Va. 1996)).

*Inc.*, 293 F.3d 707, 715 (4th Cir. 2002) (citation omitted).  For any exercise of personal jurisdiction over a non-resident, due process requires that "the defendant's contacts with the forum state must have been so substantial that 'they amount to a surrogate for presence and thus render the exercise of sovereignty just.'"  *Consulting Eng'rs*, 561 F.3d at 277-78 (citation omitted).

### A.    This Court Does Not Have Specific Jurisdiction Over Mr. Frazier.

To exercise specific personal jurisdiction, plaintiffs must demonstrate that: (1) Mr. Frazier purposefully availed itself of the privilege of conducting activities in Virginia; (2) the claims in this case arise out of those activities in Virginia; and (3) the exercise of personal jurisdiction would be constitutionally reasonable.  *Id.* at 278.

The Complaint identifies no circumstances in which Mr. Frazier personally entered into Virginia.  The only allegations concerning conduct related to Mr. Frazier in Virginia center around the Joneses' bankruptcy case in which Mr. Frazier's interests as a potential creditor were represented.  Compl. ¶¶ 37, 38, 46(g)-(i).  This is not sufficient to meet any of the three requirements for specific jurisdiction.

### 1.    Mr. Frazier Did Not "Purposely Avail" Himself of The Privilege of Conducting Activities in Virginia.

The first prong of the specific jurisdiction test—whether the defendant "purposely availed" himself of the privilege of conducting activities in the jurisdiction—articulates the minimum contacts requirement of constitutional due process.  *Consulting Eng'rs*, 561 F.3d at 78. Defending a legal right in a forum unilaterally chosen by another party is "not purposeful in a jurisdictional sense."  *Hartford Cas. Ins. Co. v. JR Mktg., LLC*, 511 F. Supp. 2d 644, 650 (E.D. Va. 2007).  In *Hartford*, the plaintiff insurance company argued that its insureds—citizens of California—were subject to jurisdiction in Virginia because they had accepted and

communicated with local counsel representing them in a third-party action filed against them in Virginia. *Id.* The court held that this conduct did not satisfy the minimum contacts requirements of due process. *Id.* The court reasoned that although the defendants "made a conscious choice to demand a defense, . . . the choice of the forum within which that defense would take place was made for them." *Id.*

The present action presents the same dynamic as in *Hartford*. The Joneses filed their bankruptcy action in Virginia purportedly "[s]eeking relief from the civil suit" pending against them in Kentucky. Compl. ¶ 33. Plaintiffs' filing of the bankruptcy action necessitated Mr. Frazier's intervention so as to protect his interest as a potential judgment creditor. In other words, Mr. Frazier was forced to preserve his rights from the pending Kentucky litigation in the forum chosen by the Joneses. Therefore, just as in *Hartford*, Mr. Frazier did not "purposely avail" himself of the forum by simply preserving his legal rights, particularly since *Kentucky litigation* necessitated his appearance.

### 2. Plaintiffs' Claims Do Not Arise Out of The Bankruptcy Proceedings.

Mr. Frazier's protection of his interest in the bankruptcy proceedings is also insufficient to satisfy the second prong of the specific jurisdiction analysis, as plaintiffs' claims cannot arise out of such conduct. Although plaintiffs fail to identify precisely what legal claims they intend to assert, it appears that the Complaint attempts to articulate some elements necessary for claims of intentional infliction of emotional distress or defamation. The bankruptcy proceedings, however, cannot serve as a predicate for such claims.

> a. Conduct made irrelevant by the statute of limitations cannot serve as a predicate for specific personal jurisdiction.

The claims the Joneses allege arise out of Mr. Frazier's conduct during the bankruptcy proceedings are undoubtedly barred by the statute of limitations. Mr. Frazier's participation in

the bankruptcy proceedings concluded on February 14, 2005. *See In Re: Jones*, Case No. 04-11658-RGM (Bankr. E.D. Va. 2004), Order Approving Settlement and Disallowing Claims, attached as Ex. 4. Plaintiffs filed the instant Complaint in May of 2009, more than four years after the end of the bankruptcy proceedings.

In Virginia, defamation-related claims carry a one-year statute of limitations: "Every action for injury resulting from libel, slander, insulting words or defamation shall be brought within one year after the cause of action accrues." VA. CODE ANN. § 8.01-247.1. A defamation cause of action accrues upon publication of the allegedly defamatory material. *See, e.g., Lewis v. Gupta*, 54 F. Supp. 2d 611, 617 n. 11 (E.D. Va. 1999) (citing *Jordan v. Shands*, 500 S.E.2d 215, 218 (Va. 1998)).

For intentional infliction of emotional distress claims, Virginia prescribes a two-year limitations period: "Undoubtedly, an action for emotional distress is an action for personal injuries carrying a two-year limitations period." *Moore v. Allied Chem. Corp.*, 480 F. Supp. 364, 369 (D.C. Va. 1979). A distress claim accrues upon completion of the act(s) alleged to have caused the plaintiff's emotional harm. *See Hayden v. United States*, No. 201CV00125, 2002 WL 449755, * 5 (W.D. Va. March 22, 2002).

As the alleged tortious conduct in Virginia occurred, at the very least, more than four years before plaintiffs filed the instant Complaint, the statutes of limitation plainly bar any claims based thereon. It follows that if plaintiffs cannot bring defamation or emotional distress claims based on the alleged conduct in the bankruptcy proceedings, the same conduct can not serve as a predicate for specific personal jurisdiction.

       b.    <u>Conduct made irrelevant by express contract, cannot serve as a predicate for specific personal jurisdiction.</u>

Plaintiffs' artful pleading conceals another important reason that the alleged conduct in Virginia cannot give rise to any claims. Although the Complaint mentions that the civil suit against the Joneses in Kentucky was dismissed in 2005, it omits that the dismissal was voluntary as a result of a settlement agreement between the Joneses and Mr. Frazier entered into in January 2005. *See* Debtor's Motion to Approve Settlement Agreement and attached "Settlement Agreement," attached as Ex. 5. Mr. Frazier's participation in the bankruptcy proceedings likewise terminated as a result of the same settlement. *See* Ex. 4.

By way of the 2005 Settlement Agreement, the Joneses and Mr. Frazier *mutually* released any and all claims against each other relating to the subject matter of the firearm litigation then-occurring in Kentucky. *See* Ex. 5, "Settlement Agreement," p. 2, ¶¶ 3-4 (The Joneses expressly "release[d] and discharge[d] Owsley Brown Frazier and the Foundation, their present and former directors, officers and employees from *all claims or causes of action related to the subject matter of the Kentucky Litigation*.") (emphasis added). Presumably plaintiffs omit mention of the mutual release because (1) the express terms of the agreement bar any claims predicated on subject matter relating to the firearm litigation (like the Joneses' present claims); and (2) if claims based on such conduct are barred, the same conduct cannot serve as a predicate for specific personal jurisdiction.

### 3.    Personal Jurisdiction Is Not Constitutionally Reasonable.

In addition to the reasons discussed above, exercising personal jurisdiction based on the allegations in the Complaint would further offend the notions of fairness and substantial justice embodied in the due process clause. Courts examine reasonableness by considering (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in

obtaining relief; and (4) the judicial system's interest in efficiently resolving disputes. *Hartford*, 511 F. Supp. 2d at 649. Given the lack of any of the predicate grounds for personal jurisdiction, it is not necessary to address the "reasonableness" element at significant length. Nevertheless, the interests weigh heavily against personal jurisdiction because, *inter alia*: (1) the Complaint directly relates to the same subject matter as civil and criminal litigation in federal court in Louisville; (2) given its familiarity with the individuals and conduct underlying this Complaint, the Kentucky court is best postured to resolve any ongoing, related disputes in an efficient manner; (3) the vast majority of the conduct alleged in the Complaint occurred in Kentucky; (4) the defendant, Mr. Frazier, resides in Kentucky; (5) the plaintiffs, the Joneses, have personally traveled to Kentucky for prior, related litigation; and (6) the plaintiffs can obtain the same relief in federal court in Kentucky as they can in this Court.[6]

### B. This Court Cannot Constitutionally Exercise General Jurisdiction Over Defendant.

In the absence of specific jurisdiction, it is possible that this Court could have general jurisdiction over Mr. Frazier if he has "continuous and systematic" contacts with the forum. *Base Metal Trading,* 283 F.3d at 213. Plaintiffs, however, allege no such contacts by Mr. Frazier in Virginia. As "the threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction," *ALS Scan, Inc.*, 293 F.3d at 715, plaintiffs cannot meet their burden of proving personal jurisdiction in this case.

The only Virginia-related conduct raised in the Complaint is Mr. Frazier's preservation of his legal rights in a bankruptcy action filed by the Joneses. Just as such conduct does not meet the minimum contacts requirements of specific jurisdiction, it necessarily fails the more stringent

---

[6] These factors are discussed in more detail, *infra*, at pages 12-21, as they are also relevant to the venue transfer analysis.

test for general jurisdiction. In agreement with *Hartford*, *supra*, other federal courts have held that mere participation in prior litigation does not satisfy the requirements for general jurisdiction. *See*, *e.g.*, *United States v. Subklew*, No. 003518CIVGRAHAM, 2001 WL 896473, at *3 (S.D. Fla. June 5, 2001) (the "defense of an action brought against [the defendant] in this forum and his assertion of a counterclaim in that action cannot be deemed a contact sufficient to subject [him] to personal jurisdiction."); *Dekalb Genetics Corp. v. Syngenta Seeds, Inc.*, 2006 WL 3837143, at *4 (E.D. Mo. Dec. 29, 2006) (non-resident defendant's consent to and conduct of prior litigation within Missouri could not justify its exercise of personal jurisdiction).

Because the Complaint fails to establish even a *prima facie* case for this Court to exercise personal jurisdiction over Mr. Frazier, the Complaint should be dismissed with prejudice.

## II. ALTERNATIVELY THIS COURT SHOULD TRANSFER VENUE OF THIS ACTION TO THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY, LOUISVILLE DIVISION.

To the extent this Court is reluctant to address personal jurisdiction at the outset, this action can be more conveniently and economically litigated if transferred to the United States District Court for the Western District of Kentucky, Louisville Division. Transfer will further the interests of justice because a substantial majority of the events and litigation underlying plaintiffs' Complaint occurred in and around Louisville, Kentucky. In fact, the questioning of the Joneses relating to the alleged bribe scheme in the Kentucky criminal action, Compl. ¶¶ 41-43, is the only ground for intentional infliction of emotional distress not yet barred by Virginia's two-year statute of limitations — and this conduct occurred in Louisville, Kentucky.

Mr. Frazier resides in Louisville, Kentucky; the firearms underlying this litigation are located in Louisville; the Joneses have appeared there for related litigation; all documents relevant to the litigation are filed there; material witnesses have appeared there; and Judges John

Heyburn and Charles R. Simpson in the Western District of Kentucky (who presided over the civil and criminal proceedings respectively) are exceedingly familiar with the facts and circumstances from which the instant Complaint arises. Under well-established principles of venue jurisprudence, the United States District Court for the Western District of Kentucky, Louisville Division, is the most convenient forum to litigate this action and it should be transferred to Louisville in the interests of convenience, justice, and judicial economy.

A.    <u>Requirements to Transfer Venue Pursuant to 28 U.S.C. § 1404.</u>

Pursuant to 28 U.S.C. § 1404(a):

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

In enacting § 1404(a), Congress intended to grant the district courts broad power of transfer for the convenience of parties and witnesses, in the interest of justice. *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955). Section 1404(a) was "intended to be a revision rather than a codification" of *forum non conveniens*, giving district courts "more discretion to transfer under section 1404(a) than they had to dismiss on grounds of *forum non conveniens*." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981). The express purpose of § 1404(a) is "to prevent the waste of time, energy, and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Pursuant to the foregoing principles, this Court is empowered and encouraged to transfer this action to the forum most convenient to litigate the issues and facts presented in this litigation.

**B.**   **The United States District Court for the Western District of Kentucky, Louisville Division, Is A Forum In Which This Action Might Originally Have Been Brought.**

28 U.S.C. § 1404(a) expressly requires that the transferee Court must be one where the action "might have been brought."  At the time this action was originally filed, venue would have been proper in the United States District Court for the Western District of Kentucky, Louisville Division.  The Western District of Kentucky may exercise subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as there is complete diversity between the parties and the amount in controversy is believed to exceed seventy-five thousand dollars ($75,000), exclusive of interest and costs.  Venue would also have been proper in the Western District of Kentucky, Louisville Division, because, consistent with 28 U.S.C. § 1391, Mr. Frazier is a lifelong resident of Louisville, Kentucky and a "substantial part of the events or omissions giving rise to the claim" occurred there.

For example: the antique weapons museum underlying this litigation is located in Louisville, Kentucky, Compl. ¶ 12; two prior related actions were litigated in the Western District of Kentucky, Louisville Division, *id*. ¶¶ 31, 32; the Joneses' 2004 bankruptcy action arose out of litigation in the Western District of Kentucky, Louisville Division, *id.* ¶ 33; the Joneses testified at the criminal trial relating to the present action in the Western District of Kentucky, Louisville Division, *id.* ¶ 41; the questioning of Plaintiffs with respect to the bribery allegations occurred in Louisville, Kentucky, *id.* ¶ 42; and the hearing on the alleged bribery occurred in Louisville, Kentucky in Judge Simpson's courtroom and under his supervision and control.  As such, this action could originally have been brought in the United States District Court for the Western District of Kentucky, Louisville Division, and defendant now respectfully moves this Court to transfer this matter to that venue in furtherance of justice.

C.    **Transfer of This Action to the United States District Court for the Western District of Kentucky, Louisville Division, Will Serve the Interests of Justice and Enhance the Convenience of the Parties and Witnesses.**

When analyzing whether transfer of venue is proper under § 1404(a), "the principal factors for the courts' consideration are (1) the plaintiff's choice of forum, (2) witness convenience and access, (3) party convenience, and (4) the interest of justice." *Koh v. Microtek Intern., Inc.*, 250 F. Supp. 2d 627, 633 (E.D. Va. 2003). While these factors guide the transfer analysis, "[s]ection 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Samsung Elecs. Co., Ltd. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 715 (E.D. Va. 2005) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). Given the facts and circumstances underlying this action, this Court should transfer venue to the Western District of Kentucky, Louisville Division, as doing so maximizes fairness and judicial economy.

1.    **Plaintiffs' Choice of Forum is Outweighed by Competing Factors.**

Generally, plaintiffs are given considerable freedom to choose the forum of litigation. But when the plaintiff's chosen forum and the cause of action "bear little or no relation … the plaintiff's chosen venue is not entitled to such substantial weight.'" *Telepharmacy Solutions, Inc. v. Pickpoint Corp.*, 238 F. Supp. 2d 741, 743 (E.D. Va. 2003) (quoting *Cognitronics Imaging Sys. v. Recognition Research Inc.*, 83 F. Supp. 2d 689, 696 (E.D. Va. 2000)).

In light of the totality of the incidents alleged in the Complaint, this forum bears little or no relation to the plaintiffs' action. The only relationship that this forum has to this action is that the Joneses reside in this district. On the other hand, the crux of the incidents alleged in the

Complaint occurred either in and around Louisville, Kentucky, or at firearm trade shows in various cities throughout the United States.[7]

The following facts identified in the Complaint occurred in, or intimately relate to the Western District of Kentucky: (1) the firearm transactions underlying this litigation created the Owsley Brown Frazier Historical Arms Museum, located in Louisville, Kentucky[8], Compl. ¶ 12; (2) the Weller Memorandum of which the Joneses complain was forwarded to and acted upon in Louisville, Kentucky, *id.* ¶ 30; (3) the Joneses were named defendants in a civil action filed in the Western District of Kentucky, Louisville Division, *id.* ¶ 32; (4) the Joneses were part of a criminal investigation in Louisville, Kentucky, *id.* ¶ 31; (5) the Joneses' bankruptcy action arose out of Kentucky litigation, *id.* ¶ 33; (6) the Joneses testified for multiple days in the criminal action in Louisville, Kentucky, *id.* ¶ 41; and (7) the investigation of the Joneses' alleged bribe conversation occurred in Louisville, Kentucky, *id.* ¶ 42.

Mr. Frazier has had negligible contact with Virginia. While Mr. Frazier entered an appearance through counsel in the Joneses' bankruptcy action, he did so merely to assert his interest as a potential judgment creditor. This was necessary *only because of the litigation then-pending in Louisville, Kentucky*. It bears even less significance in light of the fact that the Joneses released any and all claims relating to Mr. Frazier's conduct in their bankruptcy proceedings by way of the 2005 Settlement Agreement. *See* Ex. 5, "Settlement Agreement," p. 2, ¶ 4.

---

[7] Upon information and belief, the firearm trade shows referenced in the Complaint were held in Baltimore, Maryland, Las Vegas, Nevada, Cody, Wyoming, and Tulsa, Oklahoma.
[8] Upon information and belief, the Joneses have even visited Kentucky to observe the weapons collection in the Museum.

Most importantly, however, plaintiffs' only possible claim for infliction of emotional distress that is not time-barred arises out of conduct that occurred *in Louisville, Kentucky*. Any and all causes of action asserted by the Joneses relating to Mr. Frazier's conduct in Virginia are barred by applicable limitations periods because such conduct ceased more than four years ago. As discussed above, Virginia's statute of limitations for infliction of emotional harm is just *two* years, *Moore*, 480 F.Supp. at 369, and Virginia's statute of limitations for defamation-related actions is just *one* year, VA. CODE ANN. § 8.01-247.1. Accordingly, the Joneses have no claim against Mr. Frazier relating to conduct that occurred in Virginia. The Western District of Kentucky, Louisville Division, is not merely the forum bearing substantial relation to this action, it is the *only* forum bearing *any* relation to any possible claim in the Complaint that is not time-barred. Given the tenuous relationship between this forum and the instant action, plaintiffs' choice of forum carries minimal weight.

> **2.    Convenience of Witnesses and Access to Proof Weighs in Favor of Kentucky.**

In its transfer analysis, a court must consider the convenience of expected witnesses and the ease with which substantive proof may be accessed. In applying this factor, this Court has distinguished between "party witnesses"—those being the parties themselves and witnesses closely aligned with the parties—and "non-party" witnesses. *See Samsung Elecs. Co.*, 386 F. Supp. 2d at 718 (citing *Koh*, 250 F. Supp. 2d at 637)). Since, presumably, party witnesses are willing to testify in most any forum, the convenience of non-party witnesses is afforded greater weight in the transfer analysis. *Id.*

Transferring venue of this litigation to the Western District of Kentucky, Louisville Division, will maximize convenience for anticipated non-party witnesses. The present facts are

similar to those in *Impervious Paint Industries, Ltd. v. Ashland Oil, Inc.*, wherein the Pennsylvania court transferred venue to the Western District of Kentucky because "a large number of witnesses live[d] in or around Kentucky, most live[d] in the midwest, and few live[d] [in Pennsylvania]." 444 F. Supp. 465, 468 (E.D. Pa. 1978). Similarly, here, the unspecified "agents" of Mr. Frazier, whom the Joneses allege defamed them at various firearm trade shows, Compl. ¶¶ 34-35—whoever they may be—would certainly have a significant relationship with Mr. Frazier and/or the Museum, both located in Louisville, Kentucky.

In addition, as the investigation and prosecution resulting in the 2007 criminal trial emanated in Louisville (and the trial occurred in Louisville) the prosecutors and law enforcement agents who investigated the Joneses have relationships with Louisville that make their appearance in that jurisdiction convenient. Finally, Michael Salisbury and R.L. Wilson—the primary defendants in the 2007 criminal trial and, given their identification in the Complaint, likely witnesses in this action—have been litigating in the Western District of Kentucky, Louisville Division, for the last five years. Salisbury and Wilson were first named defendants in Mr. Frazier's civil action filed February 27, 2004. Compl. ¶ 32; *see also* Ex. 1, Doc. No. 1. Most recently, in February 2009, Salisbury and Wilson mediated a settlement to resolve this civil action in Louisville, Kentucky, which was dismissed on June 4, 2009. *See* Ex. 1 Doc. No. 115. In the interim, Salisbury and Wilson stood trial in the criminal matter also conducted in the Western District of Kentucky, Louisville Division. *See* Ex. 2. Non-party witnesses thus have substantial relationships with Louisville, Kentucky and, accordingly, the Western District of Kentucky, Louisville Division, is an overwhelmingly more convenient forum to litigate this action.

### 3.    Convenience of the Parties Weighs in Favor of Kentucky.

Another factor in a court's transfer analysis is the convenience for the parties themselves. The court should endeavor to choose the most convenient forum given the totality of the facts and circumstances.  Admittedly, "[a] defendant moving for transfer must show that the original forum is inconvenient for it and that plaintiff would not be substantially inconvenienced by a transfer." *Samsung Elecs. Co.*, 386 F. Supp. 2d at 718 n.15 (quoting 15 Wright, Miller & Cooper § 3849).

Given the parties' past relationship, the Western District of Kentucky, Louisville Division, is undoubtedly the most convenient forum to litigate this action.  The Joneses bear the only connection to Virginia in this matter.  Though counsel for Mr. Frazier appeared in the Joneses' bankruptcy action *five years ago*, it did so strictly to assert Mr. Frazier's interest therein as a potential judgment creditor and this participation ceased within six months.  Again, this intervention in the bankruptcy proceedings was necessary only because of civil litigation against the Joneses in the Western District of Kentucky.  The Joneses, on the other hand, would suffer little inconvenience by litigating in the Western District of Kentucky, Louisville Division, because of their familiarity with Louisville, including, among other connections, (1) the substantial amount of time they spent in Louisville, Kentucky testifying at the criminal trial of the firearm controversy underlying the instant Complaint, Compl. ¶ 41, and (2) John Jones' attendance at gun shows in Louisville.  Compl. ¶ 46(f).

Finally, this Court recognizes the importance of directing venue to the district that maximizes the interests of justice.  Judicial economy is an important factor in preserving the "interests of justice" and unquestionably warrants transfer of this action to the Western District of Kentucky.  The judges in the Western District of Kentucky, Louisville Division, are

exceedingly familiar with the facts and circumstances underlying the instant Complaint.  Chief Justice John R. Heyburn has presided over the related civil action since February 2004 and only recently ordered dismissal based on the parties' settlement on June 4, 2009.  Judge Charles R. Simpson presided over the related criminal action, including a full trial, from January 2006 to January 2008.[9]

"When related actions are pending in the transferee forum, the interest of justice is generally thought to *'weigh heavily' in favor of transfer*."  *Samsung Elecs. Co.*, 386 F. Supp. 2d at 721 (quoting *U.S. Ship Mgmt. v. Maersk Line, Ltd.*, 357 F. Supp. 2d 924, 937 (E.D. Va. 2005)) (emphasis added).  The rationale is that, in most cases, the "litigation of related claims in the same tribunal facilitates efficient, economical and expeditious pre-trial proceedings and discovery."  *Id.*

Similarly, where related actions and/or factual matters have *previously been litigated* in the transferee forum, transfer promotes efficient, economical and expeditious handling of the case by judicial officers familiar therewith.  This Court has recognized the prudence of this policy:

> There is another aspect of judicial economy, however … "[W]here a party has previously litigated a case involving similar issues and facts[,] 'a court in that district will likely be familiar with the facts of the case. As a matter of judicial economy, *such familiarity is highly desirable*.'"

*Id.* at 722 (quoting *LG Elecs., Inc. v. Advance Creative Computer Corp.,* 131 F. Supp. 2d 804, 815 (E.D. Va. 2001)) (emphasis added).  Indeed:

---

[9] The dockets pertaining to the civil and criminal matter are attached in their entirety as Ex. 1 and Ex. 2  respectively, as further support of the Western District of Kentucky's substantial familiarity with the facts and circumstances underlying the instant action.

> Litigation in the same court avoids duplicative litigation where one court has already invested "substantial time and energy" in a case. "Duplicative litigation" takes on a different meaning in this context, but the impact on judicial economy is the same. *Judicial economy and the interest of justice favor a venue which has already committed judicial resources to the contested issues and is familiar with the facts of the case*.

*Id.* at 722 (citations omitted) (emphasis added).

Pursuant to these practical considerations of fairness and judicial economy, this Court should transfer venue to the Western District of Kentucky. Transfer would harmonize with the holding in *Impervious Paint*, in which the Eastern District of Pennsylvania transferred a case to the Western District of Kentucky, in part because a sitting judge in Louisville had become "well-acquainted with the allegations underlying [the] complaint" and "much of the documentary evidence [was] in Louisville." 444 F.Supp. at 468. Similarly, in *Seghers v. Executive Risk Indem., Inc.*, the Court transferred an action to a district more familiar with the facts:

> Practical considerations…indicate that transfer would make resolution of this action more expeditious by eliminating any delays caused by this Court needing to familiarize itself with the relevant … facts and circumstances surrounding the parties' dispute. Transfer of this action … would promote judicial efficiency because *that district has already familiarized itself with [the dispute] … [A]nd all of the parties recently litigated … there*.

Civ. A. No. 06-628-MCL, 2006 WL 2865494, at *8 (D. N.J. Oct. 5, 2006) (emphasis added).

As described in detail above, the United States District Court for the Western District of Kentucky, Louisville Division, is well-acquainted with the parties, facts, and events underlying the instant action. In fact, the related civil action there was ongoing when the Joneses filed the instant Complaint. In addition, that jurisdiction has the overwhelming legal and factual nexus to the Complaint and transferring this matter to the Western District of Kentucky will promote judicial economy and the interests of justice. Therefore, in the event this Court does not dismiss

this action for lack of personal jurisdiction over Mr. Frazier, it should transfer venue to the United States District Court for the Western District of Kentucky, Louisville Division, pursuant to 28 U.S.C. § 1404(a).

## CONCLUSION

WHEREFORE, for the foregoing reasons, defendant respectfully requests that this Court dismiss plaintiffs' action for lack of personal jurisdiction over defendant, or, in the alternative, transfer venue to the United States District Court for the Western District of Kentucky, Louisville Division.

Dated: June 23, 2009

/s/ David O'Brien
_____
David O'Brien (VSB #14924)
CROWELL & MORING LLP
1001 Pennsylvania Ave., NW
Washington, DC 20004-2595
Phone: (202) 624-2500
Fax: (202) 628-5116
dobrien@crowell.com

OF COUNSEL:
Edward H. Stopher (admitted *pro hac vice*)
Richard W. Edwards (admitted *pro hac vice*)
BOEHL STOPHER & GRAVES, LLP
AEGON Center, Suite 2300
400 West Market St.
Louisville, KY 40202
Phone: (502) 589-5980
Fax: (502) 561-9400
estopher@bsg-law.com
redwards@bsg-law.com

*Attorneys for Defendant Owsley Brown Frazier*

## CERTIFICATE OF SERVICE

I hereby certify that on this day of June 23, 2009, I caused a true and correct copy of the foregoing Defendant's Memorandum of Law in Support of his Motion to Dismiss for Lack of Personal Jurisdiction, or, in the Alternative, Transfer Venue to be filed with the Clerk of Court using the ECF system, upon:

David G. Fiske
Philip John Harvey
Adrien C. Pickard
FISKE & HARVEY, PLLC
100 N. Pitt St., Suite 206
Alexandria, VA 22314
Phone: (703) 518-9910
Fax: (703) 518-9931

*Attorneys for Plaintiffs*

/s/ David O'Brien
David O'Brien (VSB #14924)
CROWELL & MORING LLP
1001 Pennsylvania Ave., NW
Washington, DC 20004-2595
Phone: (202) 624-2500
Fax: (202) 628-5116
dobrien@crowell.com

*Attorney for Defendant Owsley Brown Frazier*