IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |  |
|---|---|---|
| JOHN JONES & BELINDA JONES, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:09cv513 (JCC) |
| | ) | |
| OWSLEY BROWN FRAZIER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Owsley
Brown Frazier's Motion to Dismiss for Lack of Personal
Jurisdiction or, alternatively to Transfer Venue.  For the
following reasons, the Court will deny the motion.

**I. Background**

On May 8, 2009, John and Belinda Jones (Plaintiffs)
filed a complaint (Complaint) against Owsley Brown Frazier
(Defendant) in this Court.  The Complaint appears to state one
claim, for intentional infliction of emotional distress.  See
Pls.'s Opp'n 9.  Specifically, the Complaint alleges as follows.
In or around 1982, Belinda Jones created Collectable Arms
International, Inc. (CAI) to buy, sell, and trade antique
firearms and other weapons.  Compl. ¶ 6.  In 1998, CAI began to
buy guns from, sell guns to, and trade guns with Michael
Salisbury (Salisbury), a private arms collector and dealer, for

1

both Salisbury's personal collection and for resale by him to others.  Compl. ¶ 7.  Before this relationship began, Defendant had hired Salisbury to purchase firearms for Defendant's personal collection.  Compl. ¶ 8.  Over time, Salisbury purchased a number of antique firearms from CAI that he later sold to Defendant. Compl. ¶ 9.

At some point, Defendant founded the Owsley Brown Frazier Historical Arms Museum Foundation (Museum) in Kentucky as a non-profit organization.  Compl. ¶ 12.  He named Salisbury as the Museum's Director and agreed, in writing, to pay Salisbury a salary and commission for his services to the Museum (Contract). Compl. ¶ 13.  Defendant concealed the Contract, under which Salisbury earned approximately $250,000 per year, from the rest of the Museum's board of directors.  Compl. ¶¶ 13-14.  Defendant also began donating his personal collection of firearms to the Museum, taking large tax deductions based on the inflated valuations of them provided by R. L. Wilson (Wilson), at Defendant's request.  Compl. ¶¶ 15-18.

In 2002, the fact that the Museum was paying commissions to Salisbury was discovered by Ed Webb (Webb), a Museum employee.  Compl. ¶ 21.  Webb informed Defendant that some of the Museum's firearms (including some purchased from CAI) were not worth the amount for which Wilson had appraised them and that some were not of their stated provenance.  Compl. ¶ 21.  In

response, Defendant terminated his relationships with Salisbury and Wilson and pretended to be unaware of the Contract and Wilson's inflated appraisals.  Compl. ¶ 23.  Defendant also, without any supporting facts, claimed that Plaintiffs conspired with Salisbury and Wilson to defraud the Museum.  Compl. ¶ 25.

Defendant hired attorney Paul Weller (Weller) to conduct an investigation into the alleged malfeasance of Salisbury, Wilson, and Plaintiffs.  Compl. ¶ 27.  Weller undertook the investigation and interviewed Plaintiffs in-person. Compl. ¶ 29.  Throughout Weller's investigation, Plaintiffs maintained that they were innocent, had not conspired to defraud the Museum or falsified any documents, and had dealt with Salisbury at arm's length.  Compl. ¶ 29.

Weller eventually drafted and sent a detailed memorandum (Weller Memo) to the United States Attorney's Office (USAO) in Louisville, Kentucky.  Compl. ¶ 30.  The Weller Memo accused Salisbury, Wilson and Plaintiffs of conspiring to defraud the Museum, violating federal RICO laws, and engaging in money laundering, mail fraud, and wire fraud.  Compl. ¶ 30.  He sent the memo to prompt the USAO to initiate a criminal investigation. Compl. ¶ 30.  The USAO did thereafter initiate a criminal case in the United States District Court for the Western District of Kentucky: *United States v. Salisbury*, Case No. 3:06-CR-00010-S. Compl. ¶ 31.  Plaintiffs were the subjects of the investigation

conducted in connection with this matter, but were not indicted. Compl. ¶ 31. Weller also filed a civil complaint based on these allegations in the United States District Court for the Western District of Kentucky at Louisville on February 27, 2004: *Owsley Brown Frazier v. Salisbury*, Civil Action No. 3:04-CV-124-JGH. Compl. ¶ 32.

Defendant also sent his agents to gun shows around the country with copies of the civil suit that he had filed against Plaintiffs with instructions to pass the complaint around. Compl. ¶ 34. Defendant also instructed his agents to falsely state, at the gun shows, that Plaintiffs had been indicted, were going to jail, were already in jail, had sold Defendant fake guns, and/or had stolen millions of dollars from Defendant. Compl. ¶ 35. As a result, internet rumors and gossip flourished. Compl. ¶ 34. These lies assassinated Plaintiffs' characters, destroyed CAI's business, and turned Plaintiffs into pariahs in the antique firearms community. Compl. ¶ 36.

Defendant's civil suit and other related threats resulted in Plaintiffs' bankruptcy under Chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia on April 13, 2004: *In re: John Jones & Belinda Jones*, Case No. 04-11658. Compl. ¶ 33. CAI also filed for bankruptcy in the same court on the same day under Chapter 11 of the Bankruptcy Code. Compl. ¶ 33. Defendant appeared at

4

Plaintiffs' bankruptcy proceeding and knowingly filed a false claim against Plaintiffs. Compl. ¶ 37. His agents also knowingly swore out affidavits against Plaintiffs that falsely claimed that Plaintiffs were involved in transactions in which they were not and asserted the authors' personal knowledge of facts not possibly known to them. Compl. ¶ 38.

Eventually, the parties entered into a settlement agreement (Settlement Agreement) in January 2005.[1] Compl. ¶ 37. Defendant dismissed his civil claims against Plaintiffs, with prejudice, for no money. Compl. ¶ 37. His pattern of outrageous behavior against Plaintiffs persisted, however. Compl. ¶ 40. He refused to retract the Weller Memo or recant his lies to Plaintiffs' colleagues in the antique gun community. Compl. ¶ 40. When Plaintiffs appeared in Kentucky to testify at the related criminal proceeding, Defendant or his agents contacted the USAO and falsely stated that Plaintiffs had hosted a dinner party that evening, bragged about coaching Salisbury's attorney and taking a $50,000 cash kickback from Salisbury. Compl. ¶ 41. As a result, Plaintiffs were arrested the

---

[1] Defendant attaches the Settlement Agreement to his motion and makes arguments based upon its terms. The Court finds it inappropriate to consider the substance of the agreement at this time. The Settlement Agreement is clearly not integral to the complaint, which states a tort claim for intentional infliction of emotional distress and not a breach of contract claim under the agreement. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (A Court may consider a document submitted by an opposing party if (1) it was attached to a pleading, (2) it is integral to and relied upon in the complaint, and (3) its authenticity is undisputed.).

next morning and held in a federal facility for several hours while government officials questioned them about the non-existent bribes.  Compl. ¶ 42.  They were ultimately released and never charged, but suffered a considerable emotional harm, embarrassment, and defamation of their character.  Compl. ¶ 43.

Defendant's unnecessary and outrageous behavior harmed Plaintiffs in that they had to file for bankruptcy, shutter CAI, and Belinda Jones had to defer taking a promotion.  Compl. ¶ 45. Both Plaintiffs also suffered considerable emotional distress: Belinda Jones has and continues to require medical attention and John Jones's post traumatic stress disorder has been aggravated. Compl. ¶ 45.

On June 23, 2009, Defendant filed a Motion to Dismiss Plaintiffs' Complaint for Lack of Personal Jurisdiction or, alternatively to Transfer Venue.  Plaintiffs opposed the motion on July 14, 2009 and Defendant replied on July 24, 2009.  These documents were filed in accordance with consented-to briefing schedule entered by the Court on July 27, 2009.  This motion is currently before the Court.

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(2) permits dismissal of an action when the Court lacks personal jurisdiction over the parties.  The plaintiff bears the burden of demonstrating personal jurisdiction by a preponderance of the

evidence once its existence is questioned by the defendant. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  When a district court decides a pretrial personal jurisdiction dismissal motion without an evidentiary hearing, however, the plaintiff need prove only a *prima facie* case of personal jurisdiction. *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993); *Combs*, 886 F.2d at 676.  In deciding whether the plaintiff has proved a *prima facie* case, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor. *Combs*, 886 F.2d at 676; *Wolf v. Richmond County Hosp. Auth.*, 745 F.2d 904, 908 (4th Cir. 1984), *cert. denied*, 474 U.S. 826 (1985).

### III. Analysis

In the jurisdictional portion of the Complaint, Plaintiffs allege that they are citizens of Virginia and that Defendant is a citizen of Kentucky.  Compl. ¶¶ 1-4.  In Virginia, to establish personal jurisdiction over a non-resident, the Court must consider first whether jurisdiction is authorized by Virginia law, and then whether it comports with the due process requirements of the Fourteenth Amendment to the United States Constitution.  *Consulting Eng'rs Corp. v. Geometric, Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009); Fed. R. Civ. P. 4(e)-(f).

A.   Personal Jurisdiction under Virginia Law

Virginia's general long-arm statute extends personal jurisdiction to the fullest extent permitted by due process, collapsing the two inquires.  *English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir. 1990); Va. Code Ann. § 8.01-328.1.  It may, however, be possible for the contacts of a non-resident defendant to satisfy due process but not meet the specific grasp of Virginia's more specific long-arm statute provisions.  *DeSantis v. Hafner Creations, Inc.,* 949 F. Supp. 419, 423 (E.D. Va. 1996); Va. Code Ann. § 8.01-330 (providing for personal jurisdiction "to the extent permissible under the Due Process [C]lause").

In this case, Plaintiffs do not allege, or plead facts supporting, jurisdiction under one of the specific provisions. The Court will therefore presume that they wish to proceed under Virginia's general long-arm statute.  Va. Code Ann. § 8.01-330. To do so, it need only undertake one inquiry - into whether the exercise of personal jurisdiction over this defendant comports with the requirements of the Due Process Clause of the Fourteenth Amendment.

B.   <u>Personal Jurisdiction under the Due Process Clause</u>

The Supreme Court recognizes two types of personal jurisdiction that comport with the requirements of due process: specific and general.  "Specific jurisdiction" exists when a defendant 'purposefully directed his activities at the residents

of the forum' and that the plaintiff's cause of action 'arise[s] out of' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). "General jurisdiction" arises when a defendant's contacts with the forum state are so "continuous and systematic," defendant is subject to claims entirely distinct from his in-state activities. *Id.* at 414 n.9; *see also Coastal Video*, 59 F. Supp. 2d at 569. In their opposition to Defendant's motion, Plaintiffs argue only in favor of this Court's specific jurisdiction over Defendant. The Court will thus only evaluate that issue; it finds that it has specific jurisdiction over Defendant for the reasons below.

The Fourth Circuit "has synthesized the due process requirements for asserting specific personal jurisdiction in a three[-]part test": (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of the activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 279 (4th Cir. 2009) (*citing ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir.2002)). Only when a court finds that the first prong is satisfied need it consider the second, and then only when it finds that the second prong is satisfied need it consider the third. *Id.*

1.   *Defendant's Alleged Contact with Virginia*

At the outset, the Court will review the facts relating to Defendant's alleged activities in Virginia, as alleged in the Complaint and included in the Declarations of John Jones and Stephen Pickard.  First, Plaintiffs state that Defendant undertook a number of activities relating to Plaintiffs in Virginia.  They submit that he acted through his three attorneys: Michael B. Vincenti (Vincenti), Paul Weller (Weller), and Kevin O'Donnell (O'Donnell).[2]  His activities included directing written correspondence and requests for information and documents to Plaintiffs in Haymarket, Virginia and, later, to their attorney, Stephen R. Pickard (Pickard) in Alexandria, Virginia. Decl. John Jones ¶¶ 1, 2, 8; Decl. Pickard ¶¶ 9-10, 13-14; Compl. ¶ 29.  Pickard responded to Defendant's requests in writing from his Alexandria, Virginia office.  Decl. John Jones ¶ 4. Defendant's attorneys also conducted between five and fifteen phone calls with Pickard regarding Defendant's search for information from Plaintiffs.  Weller eventually traveled, on Defendant's behalf, to Virginia and interviewed Plaintiffs for

---

[2] Defendant correctly chooses not to object to the attribution of the acts of Defendant's three attorneys - Vincenti, Weller, and O'Donnell - to Defendant.  An agent's actions can be attributed to the principal for purposes of personal jurisdiction.  *Mitrano v. Hawes*, 377 F.3d 402, 407 (4th Cir. 2004) (*citing Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 55 (1st Cir. 2002); *Int'l. Med. Group v. Am. Arbitration Ass'n*, 312 F.3d 833, 845 (7th Cir. 2002); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 n. 22 (1985)).

several hours about their relationships with Salisbury and
Wilson.  Decl. John Jones ¶¶ 3, 7.

Plaintiffs also assert that, after they filed for
bankruptcy in the Eastern District of Virginia, Defendant filed a
proof of claim in that proceeding.  Decl. Pickard ¶ 11; Compl.
¶ 33.  Weller again traveled to Virginia to appear at the
bankruptcy court on Defendant's behalf and engaged in extensive
negotiations with Pickard by telephone and in writing.  Decl.
John Jones ¶ 4.  Plaintiffs further allege that, in Defendant's
proof of claim, Defendant admitted regular contact with Virginia:
stating that he "had an arrangement with [Plaintiffs] to purchase
antique firearms."  Pls.' Opp'n 7; Decl. John Jones ¶ 4.

Plaintiffs also submit that Pickard personally met with
Defendant's local bankruptcy counsel, Kevin O'Donnell
(O'Donnell), in Virginia.  Decl. Pickard ¶ 12.  Their meeting
resulted in an agreement, drafted in Virginia and with a Virginia
forum selection clause, to settle the parties' claims.  Decl.
Pickard ¶ 12; Compl. ¶ 39.

Finally, the Complaint alleges that, collectively,
Defendant's actions constitute a tort that occurred in Virginia.
Compl. ¶ 45.  These actions forced Plaintiffs to close their
business, suffer bankruptcy, defer a promotion, and experience
emotional distress so severe that Belinda Jones sought medical

attention and John Jones's pre-existing Post-Traumatic Stress Disorder was aggravated.  Compl. ¶ 45.

Defendant submits two general arguments against the Court's reliance on these allegations.  First, he argues that "[c]onduct made irrelevant by the statute of limitations cannot serve as a predicate for specific personal jurisdiction."  Def.'s Mot. to Dismiss 8.  He utterly fails, however, to provide any support for this asserted legal rule.  *See* Def.'s Mot. to Dismiss 8-9.  The cases that he cites relate to courts' dismissal of allegations falling beyond the applicable period of limitations for failure to state a claim.  *Tolbert v. Nat'l Harmony Memorial Park*, 520 F. Supp. 2d 209, 210 (D.D.C. 2007); *Luddeke v. Amana Refrigeration, Inc.*, 387 S.E.2d 502, 505 (Va. 1990).  None find that limitations periods are relevant to a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2).  The Court finds that Defendant's argument has no merit.  The Fourth Circuit has clearly held that courts reviewing personal jurisdiction must view all facts and draw all reasonable inferences in the plaintiffs' favor.  *Combs*, 886 F.2d at 676.  Defendant essentially asks the Court to make new law here, and it declines to do so.

Defendant also argues that the Court cannot obtain personal jurisdiction over Defendant because Plaintiffs' claims are barred by the terms of the parties' settlement agreement.

12

Def.'s Mot. to Dismiss 10. Again, the Court will not consider the substance of the Settlement Agreement at this time. In addition, whether Plaintiffs' claims are barred is not relevant to a personal jurisdiction analysis. If and when Defendant files a motion to dismiss for failure to state a claim, the Court will consider the Settlement Agreement and its effect. This argument is not relevant at this point in the litigation.

   2.   *Extent Defendant Purposefully Availed Himself of the Forum*

        In addressing the first prong of the Fourth Circuit's specific jurisdiction test, "courts have considered various nonexclusive factors in seeking to resolve whether a defendant has engaged in such purposeful availment." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009). The Fourth Circuit then set out eight factors that could apply in a business context. These factors may still be relevant to the inquiry in this case, which involves three individuals and allegations of an intentional tort. They are: whether the defendant (1) maintains agents or (2) owns property in Virginia, (3) reached into Virginia to commit the alleged acts, (4) deliberately engaged in significant or long-term activities in Virginia, (5) contacted the plaintiffs within the forum, and (6) whether the parties contractually agreed that Virginia law would govern disputes, (7) whether any performance of contractual duties was to occur in Virginia, and (8) the nature, quality and

13

extent of the parties' communications.  *Id.* (citations omitted).
Analyzing these factors and viewing "all relevant pleading
allegations in the light most favorable to the plaintiff," *Combs*,
886 F.2d at 676, the Court finds that Plaintiffs have satisfied
this prong of the specific personal jurisdiction analysis.

First, it is clear that Defendant both maintained an
agents in Virginia - O'Donnell - and sent an agent to Virginia -
Weller - and that these agents visited Plaintiffs in person in
Virginia.  A number of the parties' communications took place in
Virginia, and an even greater number took place via telephone
calls and written correspondence between Virginia and Kentucky.
These communications were repeated and appear to have continued
over the course of three years - from October 2002 until at least
September 2005.  Decl. John Jones ¶ 1; Decl. Pickard ¶ 14.  It
also appears that Defendant's activities in Virginia were
deliberate and knowingly conducted with Plaintiffs in Virginia.
The nature, quality and extent of the parties' communications
weigh in favor of Virginia jurisdiction over Defendant.

In this action, Defendant's allegedly tortious activity
occurred partly in Kentucky, partly in Virginia, and partly at
gun shows that occurred in unspecified locations.  Compl. ¶¶ 29,
31, 33-35, 41.  Defendant thus stands accused of reaching into
Virginia through his agents, to intentionally inflict severe
emotional distress on Plaintiffs.  That some, or even a majority,

14

of the allegedly tortious actions occurred outside of Virginia does not preclude this Court's personal jurisdiction. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 773-74 (1984). Instead, jurisdiction turns on an analysis of the defendant's contacts with the proposed forum, whatever they may be. *Id.*

> 3.   *Whether Plaintiffs' Claims Arise out of Defendant's Virginia Activities*

The second prong of the Fourth Circuit's due process test "requires that the defendant's contacts with the forum state form the basis of the suit." *Consulting Eng'rs Corp. v. Geometric, Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009) (*citing Burger King*, 471 U.S. at 472; *Helicopteros Nacionales*, 466 U.S. at 414). Based on the analysis of Plaintiffs' allegations in sections III.B.1 and 2, above, the Court finds it clear that defendant's contacts with the forum state form the basis of the suit.

> 4.   *Whether the Exercise of Personal Jurisdiction is Constitutionally Reasonable*

Finally, the third prong of the test, which requires the exercise of personal jurisdiction be constitutionally reasonable, "permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself" of the forum. *Id.* at 279. These factors include: "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's

15

interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Consulting Eng'rs*, 561 F.3d at 277 (*citing Burger King*, 471 U.S. at 477; *World-Wide Volkswagen*, 444 U.S. at 292).  After addressing each of these factors, the Court finds that its exercise of personal jurisdiction over Defendant is not constitutionally unreasonable.

        a.   <u>Burden on Defendant of Litigating in Virginia</u>

Defendant mentions in his reply that he "is an elderly philanthropist from Louisville, Kentucky confined to a wheelchair because of declining health."  Def.'s Reply 1.  He also asserts that many of the potential witnesses reside in Kentucky.  Def.'s Reply 15-16.  These facts make it more burdensome for Defendant to pursue this case in Virginia.  Litigating in a state other than one's residence is, for obvious reasons, more burdensome than litigating from one's home state.  In this case, however, Defendant's contacts with Virginia, including his lawyer's repeated trips here, and the fact that he obtained local counsel, and began, carried on, and concluded negotiations of a contract here, show that this burden is not excessive, nor does it appear to preclude the fair resolution of this suit.

16

        b.    <u>Virginia's Interest in Adjudicating this</u>
              <u>Dispute</u>

With respect to the next factor noted in *Consulting Eng'rs*, it is settled that states have a "'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King*, 471 U.S. at 473 (citations omitted).  In addition, "[g]enerally speaking, a 'state has power to exercise judicial jurisdiction over an individual who has done, or has caused to be done, an act in the state with respect to any claim in tort arising from the act.'" *Verizon Online Servs., Inc. v. Ralsky*, 203 F. Supp. 2d 601, 617 (E.D. Va. 2002) (*quoting* Restatement (Second) of Conflict of Laws § 36.1 (1988)).  Defendant is alleged to have committed a tort upon two citizens of this state, and is also alleged to have done so, at least in part, by directing his agents to reach into this state.

        c.    <u>Plaintiffs' Interest in Convenient &</u>
              <u>Effective Relief</u>

Plaintiffs are interested in convenient and effective relief in response to their claims of Defendant's tortious conduct against them.  Virginia provides them with the most convenient forum, as they, their counsel, their medical personnel, and other witnesses, reside near this Court.  Decl. John Jones ¶¶ 5-7.  Virginia also provides them with effective relief, they submit, because it has a "median time to trial of

17

9.8 months, the fastest in the nation," while the Western District of Kentucy, an alternative venue for this suit, has a time to trial of twenty-eight months. Pls.' Opp'n 24 (*citing* Fed. Courts Mgm't Statistics for 2008, *available at* http://www.uscourts.gov/cgi-bin/cmsd2008.pl). A plaintiff is given the initial choice of forum and that choice is generally "entitled to substantial weight." *Acterna, L.L.C. v. Adtech, Inc.*, 129 F. Supp. 2d 936, 938 (E.D. Va. 2001) (citations omitted). Here, Plaintiffs chose Virginia, their home state and the state in which some of the tortious acts are alleged to have taken place, as their forum.

        d.   <u>States' Shared Interest in Efficient Resolution of Disputes & Furthering Substantive Social Policies</u>

With respect to the fourth and fifth factors, the parties do not assert that there are any particular facts or interests that are relevant here or that would make Virginia a better or worse choice of forum, other than those discussed above. Based upon all these factors, the Court finds that its exercise of personal jurisdiction over Defendant is constitutionally reasonable.

        C.   Defendant's Alternative Request to Transfer Venue

        Defendant's motion includes an alternative request that the Court transfer this case from this Court to the Western District of Kentucky. Defendant submits that transfer is

appropriate under 28 U.S.C. § 1404.  Section 1404(a) provides
that, "[f]or the convenience of parties and witnesses, in the
interest of justice, a district court may transfer any civil
action to any other district or division where it might have been
brought."  In determining whether to grant a motion under section
1404(a), the principal factors for the district court's
consideration are (1) the plaintiff's choice of forum, (2) the
convenience of the parties, (3) the convenience and access of
witnesses, and (4) the interest of justice.  *Koh v. Microtek
Int'l, Inc.*, 250 F. Supp. 2d 627, 633 (E.D. Va. 2003).  Transfer
is appropriate only where a balancing of the relevant factors
clearly shows that the transferee forum is more convenient.  *Van
Dusen v. Barrack*, 376 U.S. 612, 646 (1964).  "[T]he burden of
proof rests with the party seeking transfer to show that that the
circumstances of the case are strongly in favor of the transfer."
*United States v. Douglas*, 626 F. Supp. 621, 626 (E.D. Va. 1985).
The Court finds that Defendant has not met this burden.

First, the plaintiff generally has the right to choose
its forum.  *Koh*, 250 F. Supp. 2d at 633 (*citing Medicenters of
Am., Inc. v. T & V Realty & Equip. Corp.*, 371 F. Supp. 1180, 1184
(E.D. Va. 1974)).  "[W]hen plaintiffs file suit in their home
forum, convenience to parties rarely, if ever, operates to
justify transfer."  *Bd. of Trustees, Sheet Metal Workers Nat'l
Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp.

19

1253, 1259 (E.D. Va. 1988)).  A transfer, like that proposed here, *see* section B.4.a, that simply "shift[s] the balance of inconvenience" from the defendant to the plaintiff is not appropriate.  *Baylor Heating*, 702 F. Supp. at 1259.  This is especially true because Plaintiffs have filed in their home forum.

Next, the Court considers the convenience and access of witnesses, including both party and non-party witnesses, although "[t]he convenience of non-party witnesses [is] afforded greater weight."  *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 718 (E.D. Va. 2005) (citation omitted).  Defendant bears "the burden to proffer . . . sufficient details respecting the witnesses and the potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience."  *Koh*, 250 F. Supp. 2d at 636 (citation omitted). Defendant only named two potential witnesses, Salisbury and Wilson, but submits only that "they have substantial relationships with Louisville, Kentucky."  Def.'s Mot. to Dismiss 18.  He neither discusses their potential testimony, nor provides the states in which they currently reside.  Defendant has not carried his burden.

Finally, the interests of justice weigh in favor of litigating in Virginia.  This factor is "designedly broad" and "intended to encompass all those factors bearing on transfer that

are unrelated to convenience of witnesses and parties," such as: "pendency of a related action, the court's familiarity with the applicable law, docket conditions, access to premises that might have to be viewed, the possibility of unfair trial, the ability to join other parties and the possibility of harassment." *Baylor Heating*, 702 F. Supp. at 1260.  Plaintiffs submit that "docket conditions" favor pursuing their action in this Court, rather than in Kentucky.  It also appears that previous actions between these parties in the Western District of Kentucky and the United States Bankruptcy Court for the Eastern District of Virginia may bear some relation to the instant case.  It is unclear whether Virginia or Kentucky law would apply to this action.  *See* Pl.'s Opp'n 9 & n.2; Def.'s Reply 9-10 n.3.  Neither of these factors favor either party and no other of the listed factors apply in this case.  The Court finds that Defendant has not shown that a transfer of this case to the Western District of Kentucky is appropriate.

## IV.  Conclusion

For these reasons, the Court will deny Defendant Owsley Brown Frazier's Motion to Dismiss for Lack of Personal Jurisdiction or, alternatively to Transfer Venue.

An appropriate Order will issue.

August 18, 2009                  _____/s/_____
Alexandria, Virginia                   James C. Cacheris
                              UNITED STATES DISTRICT COURT JUDGE

21